**EXHIBIT B**

| | | | |
|---|---|---|---|
| **STATE OF INDIANA** | ) | | **IN THE MARION SUPERIOR COURT** |
| | ) ss: | | **CIVIL DIVISION, ROOM** |
| **COUNTY OF MARION** | ) | | **CAUSE NO.** |

| | |
|---|---|
| **MANDAY SIZEMORE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **SYRA HEALTH CORPORATION,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. INTRODUCTION

Plaintiff Mandy Sizemore sues her former employer, Syra Health Corporation, for wrongful termination under Indiana common law; for failing to pay her overtime, as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and/or the Indiana Minimum Wage Law ("MWL")(Ind. Code 22-2-2-1, *et seq.)*; for illegally withholding her wages pursuant to the Indiana Wage Deduction Act ("WDA")(Ind. Code 22-2-6-1, *et seq*.), and for illegally refusing to pay her final wages, as required by the Indiana Wage Claim Act ("WCA")(Ind. Code 22-2-9-1, *et seq*.).

### II. PARTIES, JURSIDICTION, AND VENUE

1.  Plaintiff Mandy Sizemore ("Sizemore") is a resident of Indiana, and at all relevant times has been employed by Defendant Syra Health Corporation within the geographical boundaries of Marion County.

2.  Defendant Syra Health Corporation ("Syra") is a medical and healthcare staffing company, providing clinical and patient care personnel to various hospitals and other healthcare facilities.

3.  At all relevant times, Sizemore was Syra's "employee" as that term is used in 29

U.S.C. § 201, *et seq.*, Ind. Code 22-2-2-3, Ind. Code 22-2-9-2, and Ind. Code 22-2-9-2.

4. At all relevant times, Syra was Sizemore's "employer" as that term is defined in 29 U.S.C. § 201, *et seq.*, Ind. Code 22-2-2-3, Ind. Code 22-2-9-1, and Ind. Code 22-2-6-1, *et seq.*

5. Sizemore has exhausted her administrative remedies by filing a Wage Claim with the Indiana Department of Labor and receiving a decision awarding her unpaid wages in this matter, which the Defendant has not paid.

6. All events in this matter having occurred within the geographical boundaries of Marion County, Indiana, venue is proper in this court.

### III.  FACTUAL ALLEGATIONS

7. Sizemore started work at Syra, as a Certified Nursing Assistant ("CNA") on May 3, 2021.

8. Syra assigned Sizemore to work at the Neuro Diagnostic Institute at Community East Hospital ("NDI"). Her rate of pay was $17.00 per hour. Sizemore was scheduled to work three twelve and a half hour shifts per week, although she frequently worked from 20 to 30 hours of overtime per week.

9. In late June 2021, Sizemore learned she had breast cancer, and that she would require surgery. Due to limitations on her medical insurance, Sizemore would be required to pay $2,000 of the total cost of the surgery.

10. Because she did not have the $2,000, Sizemore sought an emergency loan from Syra, through her supervisor, DeShawn Polk ("Polk").

11. On June 28, 2021, Syra extended Sizemore a $2,000 loan. The loan agreement (a copy of which is attached as Exhibit A), signed by Polk, provided that the interest-free loan was to be "repaid in consecutive monthly installments of principal every pay period until December 28,

2021."

12. Sizemore had her surgery on July 1, 2021, and returned to work a few days later.

13. She received her first pay check after her return from surgery on July 16, 2021. That paycheck was for the net amount of $580.15, and Syra took no deduction for the loan repayment from the check.

14. Nor did Syra deduct a loan repayment from the checks Sizemore received on July 30 (covering Sizemore's work from July 11 through July 24), or on August 13, 2021 (covering work from July 25 through August 7).

15. Sizemore contracted COVID on August 9, and was forced to quarantine from that date through August 20, 2021. She returned to work on August 21, 2021.

16. When Sizemore received her check on August 27 (covering her time on quarantine), she had worked a total of 15.2 hours during that pay period, and her gross check should have been $258.40, and in fact, her net check showed an amount of $234.69 after taxes.

17. However, Sizemore's August 27 check showed a "Miscellaneous" deduction for $200, which Sizemore was told was her loan payment.

18. Sizemore worked her regularly scheduled hours during the August 22 through September 4 pay period, but she also worked 40 additional hours (20 each week of the pay period).

19. On September 9, 2021, at approximately 10:30 a.m., while assisting a patient confined to an Emergency Restraint Chair ("ERC"), Sizemore suffered an on-the-job injury when the ERC rolled over her foot.

20. Sizemore had to go to Urgent Care, and the NDI Clinic Supervisor, Tarin Davis, said she would clock Sizemore out.

21. After being treated at the Urgent Care, Sizemore was told to take the remainder of

the day off.

22. Sizemore was scheduled to be off the following two days, September 10 and 11, and was also scheduled to receive her paycheck for the August 22 through September 4 pay period on September 10.

23. On September 10, 2021, after discovering that she had not received her September 10 paycheck, Sizemore called Syra, and spoke to HR Manager Seth Blair, who told Sizemore that she had been suspended without pay, effective September 9, 2021. Blair provided no reason for the action.

24. Shortly thereafter, Sizemore received a letter from Syra, dated September 10, 2021, advising her that she had been terminated, retroactive to September 9, 2021.

25. Sizemore has never received her September 10 check, or her September 24 check.

### IV.  LEGAL ALLEGATIONS

### Count 1:  Wrongful Termination

26. Plaintiff restates each and every allegation in the preceding paragraphs as though fully set forth herein.

27. Syra terminated Sizemore to prevent Sizemore from exercising her statutory right to file a workers' compensation claim for her work-related injury, and/or in retaliation for exercising her statutory right to file a workers' compensation claim for her injury.

28. Syra's actions constitute wrongful termination under Indiana common law.

29. Syra's unlawful actions were done intentionally, willfully, and/or with reckless disregard for Sizemore's statutory rights.

30. As a direct and proximate result of Syra's unlawful actions, Size more suffered, and continues to suffer, damages, including but not limited to: loss of employment, income and benefits;

stress, anxiety, and emotional distress; and attorney fees.

### Count 2:  Violation of the Wage Deduction Act

31. Plaintiff restates each and every allegation in the preceding paragraphs as though fully set forth herein.

32. Pursuant to the WDA, every deduction from an employees wages is considered to be a "wage assignment."

33. Wage assignments are allowed only for the specific purposes spelled out in Ind. Code 22-2-6-2(b).

34. To legally deduct any amount from an employee's paycheck, the WDA requires to be an actual assignment of wages conforming to the requirements of the WDA.

35. The assignment must be: (a) in writing, (b) signed by the employee personally, (c) by its terms revocable at any time by the employee upon written notice to the employer, (d) agreed to in writing by the employer, and (e) an executed copy of the assignment must be delivered to the employer within ten (10) days after its execution.  Ind. Code 22-2-6-2.

36. Furthermore, the total amount of wages subject to assignment may not exceed five percent (5%) of the employee's weekly disposable earnings.

37. Syra's "loan agreement" with Sizemore is *not* a valid wage assignment under the WDA.

38. By seizing more than five percent of Sizemore's August 27, September 10th and September 24th checks, Syra unlawfully assigned Sizemore's wages in the amount of $702.73, in violation of the WDA.

39. Pursuant to the WDA, Syra is liable to Sizemore for unlawfully assigned wages in the amount of $702.73, liquidated damages in the amount of $1,405.46, for its bad faith violation

of the WDA, plus Sizemore's reasonable attorney fees and costs of litigating this action.

### Count 3: Violation of the Fair Labor Standards Act – Enterprise Coverage

40. Plaintiff restates each and every allegation in the preceding paragraphs as though fully set forth herein.

41. On information and belief, Syra has an annual dollar volume of sales or receipts in the amount of $500,000 or more, and is therefore an enterprise covered by the FLSA.

42. Sizemore is a non-exempt employee, as that term is defined by the FLSA.

43. The FLSA requires that non-exempt employees must paid time-and-one-half for every hour worked over 40 hours in a given work week.

44. Sizemore's overtime rate of pay was $25.50 per hour.

45. Sizemore worked 17.5 hours of overtime during each of the weeks of August 22-28, and August 29-September 4, 2021.

46. As a result, Sizemore was owed $892.50 in unpaid overtime for those weeks.

47. Syra failed to pay Sizemore overtime in the amount of $892.50, in violation of the FLSA.

48. An employer who violates the FLSA without a good faith belief that the payment was not required, is liable to the employee for liquidated damages in an amount equal to the amount of wages due the employee, and the employee's reasonable attorney fees and costs of the action.

49. Syra's failure to pay was intentional, willful, and/or was done with reckless disregard to Sizemore's rights, and therefore, Syra acted in bad faith.

50. Syra is liable to Sizemore for unpaid overtime in the amount of $892.50, an additional $892.50 in liquidated damages for its bad faith violation of the FLSA, and for Sizemore's reasonable attorney fees and costs of litigating this action.

**Count 4: Violation of the Fair Labor Standards Act – Individual Coverage**

51. Plaintiff restates each and every allegation in the preceding paragraphs as though fully set forth herein.

52. On information and belief, Sizemore regularly engaged in interstate commerce, and/or regularly engaged in the production of goods or services for interstate or foreign commerce during her employment by Syra, and is therefore covered by the FLSA.

53. The FLSA requires that non-exempt employees must paid time-and-one-half for every hour worked over 40 hours in a given work week.

54. Sizemore's overtime rate of pay was $25.50 per hour.

55. Sizemore worked 17.5 hours of overtime during each of the weeks of August 22-28, and August 29-September 4, 2021.

56. As a result, Sizemore was owed $892.50 in unpaid overtime for those weeks.

57. Syra failed to pay Sizemore overtime in the amount of $892.50, in violation of the IMWL.

58. An employer who violates the FLSA without a good faith belief that the payment was not required, is liable to the employee for liquidated damages in an amount equal to the amount of wages due the employee, and the employee's reasonable attorney fees and costs of the action.

59. Syra's failure to pay was intentional, willful, and/or was done with reckless disregard to Sizemore's rights, and therefore, Syra acted in bad faith.

60. Syra is liable to Sizemore for unpaid overtime in the amount of $892.50, an additional $892.50 in liquidated damages for its bad faith violation of the FLSA, and for Sizemore's reasonable attorney fees and costs of litigating this action.

61. Syra's failure to pay was intentional, willful, and/or was done with reckless

disregard to Sizemore's rights, and therefore, Syra acted in bad faith.

62. Syra is liable to Sizemore for unpaid overtime in the amount of $892.50, and is further liable for liquidated damages in the amount of $892.50, for its bad faith violation of the FLSA, and for Sizemore's reasonable attorney fees and costs of litigating this action.

### Count 5: Violation of the Minimum Wage Law

63. Plaintiff restates each and every allegation in the preceding paragraphs as though fully set forth herein.

64. Syra employed at least two employees during each week Sizemore worked for the company.

65. On information and belief, Syra is not subject to the minimum wage and overtime provisions of the FLSA, and is therefore covered by the IMWL.

66. Sizemore is an employee, as that term is defined by the IMWL.

67. The IMWL requires that non-exempt employees must paid time-and-one-half for every hour worked over 40 hours in a given work week.

68. Sizemore's overtime rate of pay was $25.50 per hour.

69. Sizemore worked 17.5 hours of overtime during each of the weeks of August 22-28, and August 29-September 4, 2021.

70. As a result, Sizemore was owed $892.50 in unpaid overtime for those weeks.

71. Syra failed to pay Sizemore overtime in the amount of $892.50, in violation of the IMWL.

72. An employer who violates the IMWL without a good faith belief that the payment was not required, is liable to the employee for liquidated damages in an amount equal to the amount of wages due the employee, and the employee's reasonable attorney fees and costs of the action.

73. Syra's failure to pay was intentional, willful, and/or was done with reckless disregard to Sizemore's rights, and therefore, Syra acted in bad faith.

74. Syra is liable to Sizemore for unpaid overtime in the amount of $892.50, an additional $892.50 in liquidated damages for its bad faith violation of the IMWL, and for Sizemore's reasonable attorney fees and costs of litigating this action.

### Count 6:  Violation of the Wage Claim Act

75. Plaintiff restates each and every allegation in the preceding paragraphs as though fully set forth herein.

76. The WCA requires that an employee who is *involuntarily terminated* from employment must be paid *all* wages due to the employee not later than the next regular payday after the separation.

77. By refusing to pay Sizemore unpaid overtime she was owed, in the amount of $892.50, Syra violated the Wage Claim Act.

78. Pursuant to the WCA, Syra is liable to Sizemore for an additional $892.50 as liquidated damages, in addition to her attorney fees and costs of litigation.

### V.  RELIEF REQUESTED

WHEREFORE, Plaintiff Mandy Sizemore, by counsel, respectfully requests the Court to enter judgment in her favor on all counts, and to provide her with the following relief:

79. Order Syra to pay Sizemore her illegally assigned wages in the amount of $702.73, plus liquidated damages in the amount of $1,405.46, for its bad faith violation of the WDA;

80. Order Syra to pay Sizemore her unpaid overtime, in the amount of $892.50, plus liquidated damages in the amount of $892.50, for its bad faith violation of the FLSA, and/or the MWL;

81. Order Syra to pay Sizemore additional liquidated damages in the amount of $892.50 for its bad faith violation of the WCA;

82. Order Syra to pay Sizemore for her lost wages, benefits, and medical expenses, as a result of its wrongful termination of her employment;

83. Order Syra to restore Sizemore to her original position, or to pay Sizemore one year of front pay in lieu thereof;

84. Order to Syra to pay Sizemore compensatory damages in an amount sufficient to make her whole for Syra's wrongful termination;

85. Order Syra to pay Sizemore punitive damages in an amount sufficient to deter Syra from future illegal conductt;

86. Order Syra to pay Sizemore's reasonable attorney fees and costs of litigating this action; and

87. Order Syra to provide Sizemore any and all other relief to which she may be entitled.

## VI. JURY TRIAL DEMAND

Plaintiff Mandy Sizemore, by counsel, demands a trial by jury on all issues so triable.

Respectfully submitted,

 s/ Jay Meisenhelder 
Jay Meisenhelder, Atty. No. 19996-49
JAY MEISENHELDER EMPLOYMENT
& CIVIL RIGHTS LEGAL SERVICES, P.C.
650 North Girls School Road, Suite D40
Indianapolis, IN  46214
Office Telephone:	317/231-5193
Direct Telephone:	317/899-9920
Facsimile Number:	317/982-5463
Email Address:	jaym@ecrls.com